IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| TIMOTHY HERALD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 6:17-cv-01507-TMP |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff, Timothy Herald, appeals from the decision of the Commissioner[1] of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB"). Mr. Herald timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g),

---

[1] It appears, from the briefs filed by the Government in other Social Security cases and from news reports, that there is neither a Commissioner nor an Acting Commissioner currently serving in the Administration, but that the functions of the job still are being performed by Nancy A. Berryhill.

1383(c)(3). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8).

The plaintiff was 47 years old on the date that he was last insured, March 31, 2013. (Tr. at 30). His past work experience includes employment as a welder helper, mobile home assembler, and construction laborer. (Tr. at 30). The plaintiff claims that he became disabled on June 30, 2009, from severe vascular disease, chronic pain in his feet and toes, four desiccated disks, nerve damage and arthritis in his left hip, depression, migraines, knee problems, and bilateral carpal tunnel syndrome. (Doc. 15, p. 2). Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2013. (Tr. at 22).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920; see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, the claimant is not disabled and the evaluation stops. Id. If he is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. Id. The decision depends on the medical

evidence in the record. See Hart v. Finch, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he will be found disabled without further consideration. Id. If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. Id. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. Id. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the

claimant can do other work, the claimant is not disabled. Id. The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; once that burden is met, the claimant must prove his or her inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process in this case, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset date of June, 30, 2009. (Tr. at 13). According to the ALJ, the plaintiff had the following impairments that are considered "severe" based on the requirements set forth in the regulations: "status post aortobifemoral bypass due to peripheral vascular disease, multi-level cervical disc disease most prominent at C3/4 and C5/6, degenerative disc disease, lumbar spine (mild), history of CAD (coronary artery disease) (minimal), bradycardia (mild), headaches, and chronic pain syndrome with chronic narcotic dependence." Id. at 22. He also determined that the plaintiff's "hypertension and adjustment disorder with depressed mood, mild, untreated" were non-severe. Id. at 23. The ALJ found that the plaintiff's severe and non-severe impairments, separately and in combination, neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. The ALJ stated that "[n]either the claimant, nor his representative alleged that the claimant has an impairment, singly or in combination, that meets or

medically equals any listed impairment. Id. The ALJ found the plaintiff to have mild restriction in activities of daily life, mild difficulties in social functioning, and mild difficulties with regard to concentration, pace, and persistence. Id. The ALJ determined that the plaintiff had the residual functional capacity to perform work at the light level of exertion with additional restrictions. Id. at 24. The ALJ further elaborated:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The undersigned further finds, however, that the full range of light work that could be performed by the claimant is reduced by the following functional limitations: the claimant would require a sit/stand option with the retained ability to stay on or at a workstation in no less than 30 minute increments each without significant reduction of remaining on task, and he is able to ambulate short distances up to 100 yards per instance on flat hard surfaces. He is able to occasionally use bilateral foot controls and frequently use bilateral hand controls. He can frequently reach overhead bilaterally, frequently reach in all other directions bilaterally and frequently hand, finger and feel bilaterally. He can occasionally climb ramps and stairs but never climb ladders or scaffolds. He can frequently balance but can only occasionally stoop and never crouch, kneel or crawl. He would be restricted from performing quick, rapid or repetitive movements of the head to the left, right or up and down but can perform in occupations where head and neck movements are slow and self-paced. The claimant should never be exposed to unprotected heights, dangerous machinery, dangerous tools, or hazardous processes or operate commercial vehicles. The undersigned further finds that the claimant would be limited to routine and repetitive tasks and simple work-related decisions. He would be able to accept constructive non-confrontational criticism, work in small group

settings and be able to accept changes in the workplace setting if introduced gradually and infrequently. In addition to normal workday breaks, he would be off-task 5% of an 8-hour workday (non-consecutive minutes).

(Tr. at 24-5)

According to the ALJ, the plaintiff was unable to perform his past relevant work through the date last insured, he was a "younger individual" on the date last insured, and has "a limited education and is able to communicate in English," as those terms are defined by the regulations. (Tr. at 30). The ALJ determined, on the basis of the testimony of a vocational expert, that there are a significant number of other jobs in the national economy that he is capable of performing, such as a marker, small parts inspector, and inspector and hand packager. (Tr. at 31). The ALJ concluded his findings by stating that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from June 30, 2009, the alleged onset date, through March 31, 2013, the date last insured." Id. at 32.

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. See

Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. See Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. Id. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting Consolo v. Federal Mar. Comm'n, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. Miles, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. See Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III. Discussion

Plaintiff, Timothy Herald, argues that the ALJ's finding that he was able to perform light work was not supported by substantial evidence and that the case should be remanded on that ground. (Doc. 13, p. 11). The Commissioner argues that there is substantial evidence in the record to support the ALJ's finding. (Doc. 17, p. 5).

In a Social Security disability determination, the burden is on the plaintiff to demonstrate that they are disabled within the meaning of the Social Security Act. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1990). Consistent with the manner in which the court reviews any decision of the ALJ, the court is looking at whether the RFC is supported by substantial evidence. Id. at 1213 (citing Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). If it is, the court will affirm even if the court finds that the evidence preponderates another way or suggests a different decision. Id. (citing Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).

The Residual Functional Capacity is a determination of the work that a plaintiff can do, in spite of his limitations, on "a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). This measure represents the ceiling, or the maximum, that a claimant is capable of doing given his or her "medically determinable impairments." Id. When there is no allegation of a physical or mental impairment and the records contains no medical evidence that such impairment exists, the ALJ is to assume that that there is no impairment of that functional capacity. Id. at *3. When establishing an RFC for the claimant, the ALJ must explain how the evidence supports the RFC. Specifically, SSR 96-8p requires, as follows:

>    The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.
>
>    . . .
>
>    The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. In instances in which the adjudicator has observed the individual, he or she is not free to accept or reject that individual's complaints solely on the basis of such personal observations.
>
>    . . .
>
>    The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

To reiterate, the ALJ found that the plaintiff had the capacity to perform a limited range of light work. (Tr. at 24). In support of this finding, the ALJ noted that he did not find that Mr. Herald's subjective reports of pain and limitation were credible. (Tr. at 25). The ALJ also gave varying weights to medical opinions,

including giving "zero weight" to the opinions of Dr. Michael Drummond, the physician who treated the plaintiff's vascular disease. (Tr. at 27-9).

   A. Claimant Credibility

The ALJ found that Mr. Herald's statements about his pain and other disabling symptoms were not entirely credible. The Eleventh Circuit established a standard to direct ALJs in evaluating claimant's subjective allegations of disabling pain and other symptoms. Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. See Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, the "standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); see also Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). However, the ALJ

should consider that symptoms can vary over time. Under Social Security Ruling ("SSR") 16-3p,

> If an individual's various statements about the intensity, persistence, and limiting effects of symptoms are consistent with one another and consistent with the objective medical evidence and other evidence in the record, we will determine that an individual's symptoms are more likely to reduce his or her capacities for work-related activities or reduce the abilities to function independently, appropriately, and effectively in an age-appropriate manner. However, inconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time. This may explain why an individual's statements vary when describing the intensity, persistence, or functional effects of symptoms.

SSR 16-3p, 2017 WL 5180304, at *10 (2017).[2]

Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" Dyer, 395 F.3d at 1210 (quoting Foote, 67 F.3d at 1562). "[P]articular phrases or

---

[2] "SSR 16-3p eliminates the term 'credibility' from social security policy but does not change the factors that an ALJ should consider when examining subjective pain testimony . . . . SSR 16-3p provides clarification of the subjective pain standard; it does not substantively change the standard." Harris v. Berryhill, No. 5:16-cv-01050-MHH, 2017 WL 4222611, at *3 n.2 (N.D. Ala. Sept. 22, 2017); see also Griffin v. Berryhill, No. 4:15-cv-0974-JEO, 2017 WL 1164889, at *6 n.10 (N.D. Ala. March 29, 2017) ("The Eleventh Circuit's pain standard is consistent with the parameters that SSR 16-3p set forth."). The 2017 version of SSR 16-3p supersedes the March 16, 2016, version only to address the applicable date of the ruling and its retroactivity. 2017 WL 5180304, at *13 n.27. The versions are materially the same in all other respects. Compare 2017 WL 5180304, *with* SSR 16-3p, 2016 WL 1119029.

formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection" which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." Id.

Here, the plaintiff met Step 1 of the standard by establishing that he had a medically determinable impairment. See Dyer, 395 at 1210. The plaintiff established that he had the severe impairments of "status post aortobifemoral bypass due to peripheral vascular disease, multi-level cervical disc disease most prominent at C3/4 and C5/6, degenerative disk disease, lumbar spine (mild), history of CAD (coronary artery disease) (minimal), bradycardia (mild), headaches, and chronic pain syndrome with chronic narcotic dependence" and non-severe impairments of hypertension and adjustment disorder with depressed mood, mild, untreated. (Tr. at 22-3). However, the ALJ found that the plaintiff did not meet the second step of the pain standard. (Tr. at 25); see Dyer, 395 at 1210. The ALJ found that the plaintiff's statements about the limiting effects of his conditions could not be fully credited because the medical evidence presented in the case did support "the intensity, persistence, and limiting effects" described by the plaintiff. (Tr. at 25). Interestingly, the ALJ did believe that the plaintiff's medically determinable impairments were severe enough to give rise to the plaintiff's alleged

symptoms; therefore, he met the third step of the pain standard. Id.; see Dyer, 395 at 1210.

The court finds that the ALJ did not state the reasons that he determined that the plaintiff's statements about the limiting effects of his conditions were not credible. Therefore, the court is unable to tell if they are supported by substantial evidence. Plaintiff's medical records support that he has limitations due to several physical impairments, most notably his vascular disease. See, e.g., (Tr. at 409-27, 433-6, 521). The ALJ stated that "in terms of the claimant's alleged symptoms and limitations, [the ALJ had] carefully read and considered the entire record regardless of whether a particular exhibit [was] discussed." (Tr. at 26). The ALJ then recited excerpts of the record and occasionally provided commentary. Id. However, the ALJ failed to state adequate reasons why he disregarded the plaintiff's testimony regarding his subjective symptoms, especially those related to his vascular disease, and, where reasons were given, they were not stated with enough specificity to allow the court to determine if they were supported by substantial evidence. See Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

For example, the ALJ stated:

> On February 24, 2010, the claimant had a primary care appointment with a nurse practitioner. The claimant first reported toe discoloration at this appointment. Medical professionals were unable to get a Doppler or a pulse. The claimant did not report back or neck pain. The claimant was self-reliant, and there is no evidence that his conditions affected his ability to work. At a follow up appointment on March 10, 2010, the claimant said his toe was much better. He reported having a 60% block on the left femoral artery and having blood clots that were obstructing the blood flow from his toe (Ex. 14F/15)
>
> The claimant was briefly treated as an inpatient in March 2010. When discharged on March 4, 2010, his diagnoses included acute left distal anterior tibial artery occlusion, mild bradycardia, ongoing tobacco abuse, history of minimal coronary artery disease, and benign hypertension. (Ex. 14F)
>
> …
>
> The claimant had surgery on July 2, 2013 for aortic occlusion. The claimant had pneumonia, but he eventually started walking and was released. He was prohibited from heavy lifting for six weeks. (Ex. 10F)
>
> …
>
> The claimant had a follow up appointment with Dr. Drummond on September 26, 2014. Mr. Herald was diagnosed with atherosclerosis with intermittent claudication. Although this visit was well past the date last insured, the undersigned notes that the claudication was intermittent. (Exs. 19F, 20F).

(Tr. at 27). This recitation of the plaintiff's medical history omits key events to the effect of dramatically understating the plaintiff's condition. This description utterly leaves out the fact that the plaintiff underwent aortic left iliac bypass

surgery, a major abdominal vascular surgery, in July *2010*. (Tr. at 409-417). The plaintiff's condition worsened. By October 2012, he saw Dr. Drummond because his great toe on the *right* was cold and blue. Ultimately, by July *2013,* his vascular occlusion on the right side required similar surgery on *both* his left and right iliac arteries. (Tr. 523-524). Not only does the ALJ unfairly understate the clear medical evidence, he does not provide any reasons why this is not objective medical evidence that confirms the severity of the symptoms caused by the vascular disease. The ALJ seems to depend heavily on the fact that the plaintiff reported that his toe was better on March 10, 2010, and the claudication was only intermittent in September 2014. However, SSR 16-3p specifically accounts for this type of variation and states that it does not mean that the plaintiff's statements about his symptoms are inaccurate. SSR 16-3p, 2017 WL 5180304, at *10 (2017) ("Inconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time. This may explain why an individual's statements vary when describing the intensity, persistence, or functional effects of symptoms.").

In sum, the court finds that the ALJ's explanation of his decision to find that the plaintiff's statements about the intensity, persistence, and limiting effects of his ailments was not credible is so deficient that the court is unable to determine if it is

backed by substantial evidence. On remand, the ALJ needs to explain his credibility findings with a degree of specificity that allows the court to undertake the required analysis.

B. Medical Opinions

The ALJ afforded "zero weight" to the opinion of the physician treating plaintiff's vascular disease, Dr. Drummond. The ALJ must consider several factors in determining the weight to be given to a medical opinion. 20 C.F.R. § 404.1527(c). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. See 20 C.F.R. §§ 404.1527(d), 416.927(d). The opinion of a treating physician, who has an ongoing relationship with the patient, is entitled to the greatest weight. 20 C.F.R. § 404.1502. A non-treating physician or psychologist, who has examined the patient but does not treat the patient, is entitled to less weight. Id. The least weight is given to a non-examining medical source, who may provide an opinion based on the record but who has not examined the patient. Id.

Even so, any medical source's opinion can be rejected where the evidence supports a contrary conclusion. See, e.g., McCloud v. Barnhart, 166 F. App'x 410,

418-19 (11th Cir. 2008). However, before an ALJ can disregard the opinion of a treating physician, he must show good cause for doing so. Id. (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists where the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Id. (citing Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004).

The court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. See, e.g., 20 C.F.R. § 404.1546(c).

\

### 1. Dr. Michael Drummond

Dr. Michael Drummond was a treating physician for Mr. Herald who provided treatment and surgery for vascular disease. (Tr. at 409-31, 522-3). On July 16, 2010, Dr. Drummond opined that the plaintiff was unable to work due to his health conditions. (Tr. at 28). The ALJ afforded "zero weight" to this opinion because the determination of whether the plaintiff had the residual capacity to work was a decision reserved to the Commissioner. Id. While it is true that the opinion that the plaintiff was unable to work was not a medical opinion, it is still relevant to the ALJ's findings. See 20 C.F.R. § 404.1546(c). The ALJ is not free to disregard the entire source altogether simply because he made a statement that would be dispositive of a case. Dr. Drummond also opined that plaintiff had hip claudication that was incapacitating at work on June 23, 2010. (Tr. at 424). The ALJ does not address this opinion at all. (Tr. at. 28). The ALJ does not discuss Dr. Drummond's two surgeries to repair and correct major occluded arteries in the plaintiff's lower extremities. Where the ALJ, as here, fails to discuss the pertinent elements of a medical opinion and the reasons that he discredited the opinion, the court must remand the case. See Winschel v. Comm'r of Soc. Sec. Admin., 631 F.3d 1176, 1179 (11th Cir. 2011). The court may not simply affirm because some rationale might hypothetically support the ALJ's decision. See id.

In sum, the court is unable to tell if the ALJ's decision to afford "zero weight" to the opinion of Dr. Drummond is supported by substantial evidence because the ALJ fails to discuss part of the opinion and fails to give reasons why he is discrediting the opinion. On remand, the ALJ shall closely review the entirety of Dr. Drummond's opinion and demonstrate to the court that there is "good cause" if the opinion is to be afforded less than "substantial or considerable weight." See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

## CONCLUSION

Upon review of the administrative record, and considering all of Mr. Herald's arguments, the Court finds that some of Commissioner's findings are not specific or detailed enough to enable to the court to determine if they are backed with substantial evidence. Accordingly, the case is due to be remanded. A separate order will be entered.

DONE this 12th day of March, 2019.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE